**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE ARTHUR J. GALLAGHER DATA BREACH LITIGATION** | Master File No. 1:22-cv-00137 |
| | Hon. Mary M. Rowland |
| | Hon. Jeffrey T. Gilbert |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................... 2

II.     CASE SUMMARY.................................................................... 3

     A.      The Data Incident........................................................... 3

     B.      Procedural Posture......................................................... 4

     C.      History of Negotiations and Settlement.................................. 5

III.    SUMMARY OF THE SETTLEMENT.............................................. 6

     A.      The Settlement Class....................................................... 6

     B.      The Settlement Benefits.................................................... 6

         1.      Reimbursement of Documented Monetary Losses................. 7

         2.      Financial Account Monitoring..................................... 7

         3.      Alternative Pro Rata Cash Payment............................... 7

         4.      California Statutory Payment...................................... 7

         5.      Remainder Funds................................................... 7

         6.      Business Practices Commitments.................................. 8

     C.      Settlement Administration.................................................. 8

         1.      CAFA Notice....................................................... 8

         2.      Notice............................................................... 8

         3.      Settlement Website and Telephone Line........................... 8

         4.      Objections and Requests for Exclusion............................ 9

     D.      Scope of the Release........................................................ 10

     E.      Attorneys' Fees, Costs, and Service Awards............................. 10

IV.     ARGUMENT.......................................................................... 11

-i-

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

A.    The Settlement Class Should be Certified for Settlement Purposes………..    13

    1.  Numerosity…………………………………………………………..    13

    2.  Commonality………………………………………………………….    14

    3.  Typicality…………………………………………………………….    14

    4.  Adequacy of Representation…………………………………………    15

    5.  Certification under Rule 23(b)(3) is appropriate………………………    16

        *a.  Common Questions of Law and Fact Predominate*…………………    16

        *b.  A Class Action is the Superior Method of Adjudicating this Case*…..    17

B.    The Proposed Settlement Satisfies the Standard for Preliminary Approval...    18

    1.  The Strength of Plaintiffs' Case is Well-Balanced Against the Amount Offered in Settlement…………………………………………………    19

    2.  The Complexity, length, and Expense of Continued Litigation Favors Settlement……………………………………………………    21

    3.  There is No Opposition to the Settlement Among the Impacted Parties...    21

    4.  The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations…………………………………………..    21

    5.  The Parties Engaged in Significant Motion Practice and Discovery……    22

C.    The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator……………………………………..    22

D.    The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved……………………………………………………    23

IV.    CONCLUSION……………………………………………………………    24

- ii -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page**

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997) ................................................ 13

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184 (2013) ........................... 16

*Anderson v. Garner*, 22 F.Supp.2d 1379 (N.D. Ga. 1997) ........................................... 14

*Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980).. 11, 21

*Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5536, 2011 WL 2708399,
     (N.D. Ill. Jul. 12, 2011) ............................................................... 12

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981) .............................................. 12

*Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302 (N.D. Ill. 1995) .................................... 13, 17

*Columbus Drywall & Insulation, Inc. v. Masco Corp.* 258 F.R.D. 545
     (N.D. Ga. July 20, 2007) ................................................................ 13

*De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225 (7th Cir. 1983) ................................... 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884 (7th Cir.1985) ................................. 12, 18

*Ebersohl v. Bechtel Corp.*, No. 09-1029-GPM, 2010 WL 2266736 (S.D. Ill. June 7, 2010) ....... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ................................................ 23

*Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) ............................................... 16

*Fox v. Iowa Health System*, No. 3:18CV00327, 2020 WL 5678704 (W.D. Wis. Sep. 16, 2020). 14

*Garner v. Healy*, 184 F.R.D. 598 (N.D. Ill. 1999) ................................................. 15

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................................ 11

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ................. 20

*In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330
     (N.D. Ill. 2010); ..................................................................... 11, 12, 19, 20

*In re Bromine Antitrust Litig.*, 203 F.R.D. 403 (S.D. Ind. 2001) .................................... 12

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F.Supp.3d 781 (N.D. Ill. 2015) ............... 21

- iii -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

*In re Holocaust Victim Assets Litig.*, 105 F.Supp.2d 139 (E.D.N.Y. 2000) ................................ 21

*In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369 (D.D.C. 2002) ........................ 21

*In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*,
   314 F.R.D. 580 (N.D. Ill. 2016) ................................................................................ 12

*In re TikTok, Inc. Consumer Privacy Litigation*, MDL No. 3948, 2021 WL 4478403
   (N.D. Ill. Sept. 30, 2021) ........................................................................................ 12

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ................................................................. 11, 18, 19

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677 (7th Cir. 1987) ........................ 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................. 23

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) .................................................................. 15

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ............................................................. 16

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). ............................................................ 17

*Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ...................................................... 21

*Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019) ....... 14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ............................................................. 14, 17

*Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326 (7th Cir. 1969) ...................................... 13

*Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982) ................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................... 14

*Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014) ................................................... 18

## Statutes

California's Consumer Privacy Act, Cal. Civ. Code. §§ 1798.150, *et seq* .................................... 5
California's Customer Records Act, Cal. Civ. Code §§ 1798.81.5……………………..................5
Fed. R. Civ. P. Rule 23(a) ............................................................................................. 13, 15
Fed. R. Civ. P. Rule 23(a)(1) .............................................................................................. 13
Fed. R. Civ. P. Rule 23(a)(2) .............................................................................................. 14
Fed. R. Civ. P. Rule 23(a)(3) .............................................................................................. 14
Fed. R. Civ. P. Rule 23(a)(4) .............................................................................................. 15
Fed. R. Civ. P. Rule 23(b) .................................................................................................. 13

Fed. R. Civ. P. Rule 23(b)(3) ................................................................... 16, 17, 18, 25
Fed. R. Civ. P. Rule 23(c)(2)(A) ............................................................................... 24
Fed. R. Civ. P. Rule 23(c)(2)(B) ......................................................................... 23, 24
Fed. R. Civ. P. Rule 23(e) ............................................................................. 1, 11, 23
Fed. R. Civ. P. Rule 23(e)(1) ..................................................................................... 23
Fed. R. Civ. P. Rule 23(h)(1) ..................................................................................... 24

Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA")
    815 Ill. Comp. Stat. §§ 505/1, *et seq* ................................................................ 5

Maryland Consumer Protection Act, Md. Comm. Code §§ 13-301, *et seq* ................................... 5

New Hampshire Consumer Protection Act ("NHCPA"), N.H.R.S.A. §§ 358-A, *et seq*. ............... 5

New Hampshire Notice of Security Breach law, N.H.R.S.A.
    §§ 359-C:20(I)(a), *et seq* ................................................................................ 5

Washington State Consumer Protection Act, RCW 19.86.010, *et seq* ........................................ 5

Washington State Security Breach Notification Law RCW § 19.255.010, *et seq* ......................... 5

## **Other**

1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002). ................ 14

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND
    PROCEDURE § 1778, at 528 (2d ed. 1986) ..................................................................... 16

Manual for Complex Litigation**,** § 21.632 (4th ed. Supp. 2010) .................................................. 11

13 ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 (2012) ........ 12

Pursuant to Federal Rule of Civil Procedure Rule 23(e), Plaintiffs Tracey Bock, Christopher Caswell, Matthew Copple, Jeremy Fischer, Peter Horning, Julia Kroll, Amanda Marr, Leslie May, Jonathon Mitchell, John Parsons, Adrian Villalobos, Julia Ward, and Chandra Wilson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, respectfully move the Court for preliminary approval of the proposed settlement of this class action (the "Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement dated September 10, 2024 (the "Settlement Agreement" or "SA").[1]

Plaintiffs respectfully request the Court grant the Motion and enter a Preliminary Approval Order ("PAO"): (1) certifying the Class for settlement purposes; (2) appointing Plaintiffs as representatives of the Settlement Class; (3) appointing Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry of Clayeo C. Arnold, APC; and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Settlement Class; (6) directing that the Notice to the Settlement Class be disseminated by the Settlement Administrator, in the manner described in the Settlement Agreement; (7) establishing a deadline for Settlement Class members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed settlement schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing.

---

[1] Unless otherwise indicated, the defined terms herein shall have the same definitions as in the Settlement Agreement, filed as **Exhibit 1** to the Declaration of M. Anderson Berry in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Berry Decl.").

## I. __INTRODUCTION__

This case arises from a Data Security Incident suffered by Defendants Arthur J. Gallagher & Co. ("AJG") and its affiliate Gallagher Bassett Services, Inc. ("GB", collectively, "Defendants", and together with Plaintiffs, the "Parties") that compromised the personal and private identifying information ("PI") of approximately 3,492,654 individuals nationwide. Plaintiffs, individually and on behalf of the Settlement Class (as defined below), filed suit against Defendants for not adequately protecting their PI. Throughout the pendency of the litigation, Defendants have denied allegations of wrongdoing and liability and asserted defenses to all claims.

Over the course of this multi-year litigation, knowing the risks of continued litigation, the Parties engaged in settlement negotiations, including four mediation sessions with highly respected private mediator, and retired United States District Judge Wayne Andersen of JAMS. Through these extended mediations and extensive negotiations, the Parties reached an agreement providing for significant monetary and equitable relief for the Settlement Class, including the creation of a $21,000,000 non-reversionary Settlement Fund and enhanced data security procedures Defendants put in place subsequent to the Data Security Incident. From this Settlement Fund, in addition to paying all costs of notice and claims administration, attorneys' fees and expenses, and service awards, all 3,492,654 Settlement Class Members will be provided the ability to: have their documented Monetary Losses reimbursed up to $6,000; and to submit a claim for either three (3) years of CyEx Identity Defense Total with three bureau monitoring and at least $1,000,000 of fraud/identity theft insurance or a *pro rata* share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid. Settlement Class Members who were California residents at any time from June 3, 2020 until the end of the claims period may claim an additional

cash payment of $100 in recognition of their statutory claims under the California Consumer Privacy Act.

Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Parties' settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Plaintiffs as Class Representatives; (3) appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry of Clayeo C. Arnold, APC; and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Class Counsel; (4) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, and confirm that it is appropriate notice and that it satisfies due process and Rule 23; (6) schedule a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims, and to object to or exclude themselves from the Settlement.

## II.    CASE SUMMARY

### A.    The Data Incident

AJG is among the world's leading insurance brokerage, risk management, and HR & Benefits consulting companies in the world, with over 34,000 employees and a global network providing services in more than 150 countries. Berry Decl., ¶ 9. AJG's global group of companies and partners includes GB, a third-party administrator and claims manager. *Id.* Plaintiffs and class members entrusted their personal, private information such as names; addresses; Social Security Numbers ("SSN") or tax identification numbers; driver's license, passport, or other government identification numbers; dates of birth; usernames and passwords; employee identification numbers; financial account or credit card information; electronic signatures; medical treatment,

claim, diagnosis, medication, or other medical information; health insurance information; medical records or account numbers; and/or biometric information to Defendants. *Id.*

Plaintiffs allege that between June 3, 2020 and September 26, 2020, an unknown party accessed or acquired data, including Plaintiffs' and Class Members' PI, from Defendants' network. *Id.*, ¶ 10. By May 24, 2021, Defendants had concluded that the information taken involved the approximately 3,492,654 people to whom Defendants provided notice of the Data Security Incident, beginning in June 2021. *Id.* Plaintiffs allege that, due to the Data Security Incident, an unauthorized user accessed Plaintiffs' and Class Members' PI. *Id.*, ¶ 11.

**B.**     **Procedural Posture**

Plaintiff Parsons filed the first case arising from the Data Breach on July 29, 2021, and the case was later consolidated with subsequently filed cases. *Id.*, ¶ 13. On October 29, 2021, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC"). ECF No. 25, Master File No. 1:21-cv-04056. *Id.* On January 14, 2022, Defendants filed a motion to dismiss the CCAC. ECF No. 3. *Id.* On September 28, 2022, this Court granted Defendants' motion in part and denied it in part. ECF No. 25. *Id.* Plaintiffs then filed the Second Consolidated Class Action Complaint ("SCCAC") on October 14, 2022 (ECF No. 27), and Defendants answered it on November 4, 2022 (ECF No. 34). *Id.*

The SCCAC is brought on behalf of Plaintiffs and "[a]ll United States residents whose [personally identifiable information] and/or [protected health information] was accessed or acquired during the ransomware event that is the subject of the Notice of Data Breach that Defendants sent to Plaintiffs and other Class Members on or around August 17, 2021" SCCAC, ¶ 342. It also names several state specific subclasses. Plaintiffs allege eleven causes of action for: (1) negligence; (2) breach of implied contract; (3) violations of California's Consumer Privacy Act

("CCPA"), Cal. Civ. Code. §§ 1798.150, *et seq*.; (4) violations of California's Customer Records Act ("CCRA"), Cal. Civ. Code §§ 1798.81.5, *et seq*.; (5) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"), 815 Ill. Comp. Stat. §§ 505/1, *et seq.*; (6) violations of the Maryland Consumer Protection Act, Md. Comm. Code §§ 13-301, *et seq*.; (7) violations of the New Hampshire Consumer Protection Act ("NHCPA"), N.H.R.S.A. §§ 358-A, *et seq*.; (8) violations of the New Hampshire Notice of Security Breach law, N.H.R.S.A. §§ 359-C:20(I)(a), *et seq*.; (9) violations of the Washington State Consumer Protection Act, RCW 19.86.010, *et seq.*; (10) violations of the Washington State Security Breach Notification Law RCW § 19.255.010, *et seq*.; and (11) breach of contract.

### C.    History of Negotiations and Settlement

The Settlement is the result of years of arm's-length negotiations and hard bargaining. The Parties exchanged informal and voluminous formal discovery (including over 23,000 pages produced by Defendants and third-parties and reviewed by Plaintiffs), regarding, *inter alia*, the allegations in the Complaint, the class size and types of data impacted in the Data Security Incident, and information supporting Plaintiffs' damages allegations, including an independent audit report by Ernst & Young covering the Data Security Incident, Defendants' internal and external security surveys and reports, communications with state regulators, and many other matters. Berry Decl., ¶ 15. Formal discovery also involved the service, by Plaintiffs, of numerous third-party subpoenas to entities associated with Defendants requesting the production of documents concerning Defendants' cybersecurity practices and the Data Security Incident which resulted in the production of many such documents. *Id.*, ¶ 18. Through the formal and informal discovery processes, Plaintiffs were able to evaluate damages on a class-wide basis. *Id.,* ¶ 21. Recognizing the risks of continued litigation, the Parties continually tried to resolve their dispute. *Id.,* ¶ 22.

During four separate day-long mediation sessions, occurring between February 23, 2022 and April 17, 2024, the Parties substantially narrowed the space between their respective positions. *Id.,* ¶ 23. On April 24, 2024, Judge Andersen made a mediator's proposal to settle this matter for a non-reversionary "all in" common fund of $21,000,000, which was accepted by the Parties on April 30, 2024. *Id.,* ¶ 24. Since then, the Parties have diligently worked to reduce their agreement to a final, written, Settlement Agreement, which was executed on September 10, 2024. *Id.,* ¶ 25.

The $21,000,000 non-reversionary Settlement Fund created by the Settlement Agreement will resolve all claims related to the Data Security Incident on behalf of the Class. *Id.,* ¶ 26.

## III.   SUMMARY OF THE SETTLEMENT

### A.   The Settlement Class

The Settlement provides for a nationwide Settlement Class defined as: "the approximately 3,492,654 individuals identified on the Settlement Class List who were mailed a letter from AJG or GB stating that their information may have been impacted as a result of the Data Security Incident." S.A., ¶ 39. The judges presiding over this Action and members of their direct families, and Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline are excluded from the Class. *Id*.

### B.   The Settlement Benefits

The $21,000,000 non-reversionary Settlement Fund will be used to make payments to Settlement Class Members and to pay Administration and Notice Costs, the required CAFA notice, as well as any attorneys' fees and expenses and any service awards approved by the Court. S.A., ¶¶ 43, 51. The benefits to the Class are: reimbursement of Monetary Losses, Financial Account Monitoring, Alternative Pro Rata Cash Payments, and California statutory payments.

### 1. Reimbursement of Documented Monetary Losses

Settlement Class Members may make a claim for reimbursement of Monetary Losses fairly traceable to the Data Security Incident for up to $6,000 per Settlement Class Member. S.A., ¶ 57.

### 2. Financial Account Monitoring

Settlement Class Members may also claim three (3) years of CyEx Identity Defense Complete with three-bureau credit monitoring and at least $1,000,000 of fraud/identity theft insurance. S.A., ¶ 58(a).

### 3. Alternative Pro Rata Cash Payment

In lieu of Financial Account Monitoring, Settlement Class Members may claim an Alternative Pro Rata Cash Payment to be determined *pro rata* based on the remainder of the Settlement Fund following payment of the Fee Award and Expenses, Service Awards, Administration and Notice Costs, CAFA Notice costs, the costs of Financial Account Monitoring, claims for reimbursement of documented Monetary Losses, and the California Statutory Payments. S.A., ¶ 58(b).

### 4. California Statutory Payment

Finally, California Settlement Class Members can submit a claim for an additional payment of up to $100.00 for their statutory claims under the California Consumer Privacy Act. S.A., ¶ 59.

### 5. Remainder Funds

Remainder Funds shall be distributed to the University of Chicago Computer Science SAND Lab, a charitable organization jointly recommended by the Parties to be approved by the Court, or any other charitable organization approved by the Court. S.A., ¶ 60.

### 6. Business Practices Commitments

Defendants have provided confidential information subject to the Court's protective order outlining, *inter alia*, enhanced data security procedures Defendants put in place subsequent to the Data Security Incident. None of the past or future costs associated with these security procedures has been or will be paid by Plaintiffs or from the Settlement Fund. S.A., ¶ 61.

### C. Settlement Administration

Following a competitive bid process the Parties have retained Kroll Settlement Administration, LLC ("Kroll"), an experienced settlement administrator, to administer the Settlement.

### 1. CAFA Notice

Within ten (10) days of filing this motion for Preliminary Approval, Kroll shall cause a CAFA Notice to be served on the appropriate government officials, the cost of which shall be paid from the Settlement Fund. S.A., ¶ 65.

### 2. Notice

Within seven (7) days of the entry of the PAO, Defendants will provide Kroll with the Settlement Class List. S.A., ¶ 63. Within forty-six (46) days of the entry of the PAO, Kroll shall complete the initial mailing of the Short Notice and tear-off Claim Form (S.A., Exs. A, C) via first class U.S. Mail, to all Settlement Class Members. S.A., ¶ 70. Settlement Class Members may mail their tear-off Claim Form to Kroll or may submit their claim electronically. All claims must be post-marked or submitted electronically within ninety (90) days of the Notice Date.

### 3. Settlement Website and Telephone Line

Before mailing the Short Notice and tear-off Claim Form, Kroll shall establish a dedicated Settlement Website informing Class Members of the terms of the SA, their rights, relevant dates

and deadlines, and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Long Notice; (ii) the Claim Form; (iii) the Preliminary Approval Order; (iv) the Settlement Agreement; (v) the Complaint; and (vi) any other materials agreed on by the Parties and/or required by the Court. S.A., ¶ 71. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically. *Id.*

Kroll will also establish a toll-free help line that will be staffed with live operators to answer questions and provide information to Settlement Class Members regarding the Settlement and provide paper copies of the Short Notice, Long Notice, Claim Form, and the Settlement Agreement upon request. S.A., ¶ 72.

### 4. Objections and Requests for Exclusion

Any Settlement Class Member who wishes to opt out of the settlement will have until 60 days after the Notice Date to provide written notice by mail to Kroll that they would like to be excluded from the Settlement Class, with the Short Notice informing each Settlement Class Member of this right. S.A., ¶ 75. A valid request for Exclusion must: (i) state a full name, current address, and telephone number; (ii) contain the Settlement Class Member's signature; and (iii) contain a clear statement communicating that the Settlement Class Member elects to be excluded from the Settlement Class, does not wish to be a Settlement Class Member, and elects to be excluded from any judgement entered pursuant to the Settlement; and (iv) be postmarked on or before the Opt-Out Deadline. Settlement Class Members who fail to submit a valid and timely request for exclusion shall be bound by the Settlement Agreement. S.A., ¶ 76.

Settlement Class Members who wish to object must do so in writing within sixty (60) days after the Notice Date. S.A., ¶ 83. The Parties request that the Court require any Settlement Class

Member wishing to object to file the objection via the Court's electronic filing system (if represented by counsel) or to send the objection to Kroll and mail copies to the Parties' Counsel via first-class mail. S.A., ¶ 81. Each objection must: (i) set forth the Settlement Class Member's full name, current address, and telephone number; (ii) contain the Settlement Class Member's original signature; (iii) state that the objector has reviewed the Settlement Class definition and understands that they are a Settlement Class Member and provide written proof establishing that they are a Settlement Class Member; (iv) state that the Settlement Class Member objects to the Settlement in whole or in part; (v) set forth a statement of the specific legal and factual basis or bases for the objection, including whether each objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and including any evidence or legal authority the Settlement Class Member wishes to bring to the Court's attention; (v) provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her position; and (vi) state whether the Settlement Class Member intends to appear at the Final Approval Hearing. S.A., ¶ 82.

### D.     <u>Scope of the Release</u>

Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendants from claims arising from or related to the Data Security Incident. S.A., ¶¶ 33, 106-110. The scope of the release is detailed in section XV of the SA and is limited to claims arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Action. S.A., ¶ 33.

### E.     <u>Attorneys' Fees, Costs, and Service Awards</u>

No later than 14 days before the Objection deadline, Class Counsel will request the Court approve an award of attorneys' fees up to one-third of the Settlement Fund plus reasonable

- 10 -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

litigation expenses. S.A., ¶ 89. Class Counsel will also request a service award of up to $7,500 for Plaintiffs Bock, Horning, and Kroll, who were deposed, and $5,000 for Plaintiffs Caswell, Copple, Fischer, Marr, May, Mitchell, Parsons, Villalobos, Ward, and Wilson, who were not deposed, due to their efforts in this Action and commitment on behalf of the Settlement Class. S.A., ¶ 91.

## IV. <u>ARGUMENT</u>

Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd of Sch. Directors of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Any class action settlement requires: (i) the Court to preliminarily approve it; (ii) that members of the settlement class receive notice; and (iii) that the Court hold a final hearing to decide whether it is fair, reasonable, and adequate. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010); *see generally* Fed. R. Civ. P. 23(e). In considering preliminary approval, the Court must determine whether the settlement is within the "range of possible approval," i.e., within the range of what might be found fair, reasonable, and adequate. *In re AT&T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010).; *Gautreaux*, 690 F.2d at 621 n.3.

When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the court must: (1) determine if it will likely be able to certify the class for purposes of judgment; (2) determine whether the proposed settlement is within the range of possible approval under Rule 23(e); and (3) approve the notice plan and direct notice be provided "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re*

*TikTok, Inc. Consumer Privacy Litigation*, MDL No. 3948, 2021 WL 4478403, *5 (N.D. Ill. Sept. 30, 2021) (slip op.) (internal citations omitted).

During preliminary approval, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 (2012). When analyzing whether a proposed settlement is fair, reasonable, and adequate, courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T*, 270 F.R.D. at 346 (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir.1985)). As a result, Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See, e.g., In re Nat'l Collegiate Athletic Assoc. Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016) ("At this initial stage, the court is not 'resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.' . . . This is why some courts at this stage perform a summary version of the exhaustive final fairness inquiry.") (quoting *Hiram Walker & Sons, Inc.,* 768 F.2d at 889); *see also In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low"); *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5536, 2011 WL 2708399, at *8 (N.D. Ill. Jul. 12, 2011) ("Although the 'fair, reasonable, and adequate standard' and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase.") (citations omitted). The Supreme Court has cautioned that, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Hiram Walker & Sons, Inc.*, 768 F.2d at 889.

The Settlement is fair, reasonable, adequate, and well within the range of possible approval, because it provides benefits to all Settlement Class Members, avoids the uncertainty of litigation, and avoids the need to resolve contentious factual and legal issues. The Settlement further satisfies the factors set forth by the Seventh Circuit for assessing whether a proposed settlement is within the range of fair, reasonable, and adequate.

### A. The Settlement Class Should be Certified for Settlement Purposes

The benefits of a settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy the Court that the requirements of Rule 23(a) and one of the requirements of Rule 23(b) are met. The requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Moreover, here, Plaintiffs seek certification of the Class under Rule 23(b)(3), which provides that certification is appropriate when common questions of law or fact predominate over individualized issues, and a class action is the superior method of handling the case. *See* Fed. R. Civ. P. 23(b)(3).

#### 1. Numerosity

Numerosity under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). Classes of 40 members meet this requirement. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (finding fifty class members satisfy numerosity requirement). "There is no specific number below which class action relief is automatically precluded . . . [t]o demonstrate numerosity, "plaintiffs need not prove that joinder is impossible; rather, plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *Columbus Drywall & Insulation, Inc. v. Masco*

*Corp.*, 258 F.R.D. 545, 557 (N.D. Ga. July 20, 2007) (quoting *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1384 (N.D. Ga. 1997)). Here, the joinder of 3,492,654 Class Members would certainly be impracticable, and thus, the numerosity element is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2)'s commonality requirement is satisfied where the claims asserted "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Commonality focuses on the relationship of common facts and legal issues among class members. 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).

Here, the claims turn on whether Defendants' data security was adequate to protect Class Members' PI. That inquiry does not vary from Class Member to Class Member and can be fairly resolved—for settlement purposes—all at once. This requirement in the context of cybersecurity incident class action settlements is readily satisfied. *See Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019); *Fox v. Iowa Health System*, No. 3:18CV00327 2020 WL 5678704 (W.D. Wis. Sep. 16, 2020).

### 3. Typicality

For the typicality requirement (Rule 23(a)(3)), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v.*

*Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted); *see also Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where plaintiffs, like the class, "believed that they were getting something more than they ultimately received"). Here, the claims all involve Defendants' conduct toward the Class, and the claims are all based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the Class, and they are appropriate Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied where the class representative (1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have antagonistic interests to the class. "[I]t is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, No. 09-1029-GPM, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (quoting *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Plaintiffs have no conflicts with the Class and have participated actively in the case, and Class Counsel have significant relevant experience litigating scores of privacy related class action matters. Berry Decl., ¶¶ 3, 5-6, 44 and Exs. 2, 3, and 4. For example, Mr. Berry has litigated more

than 100 privacy-related class action and *qui tam* cases and is lead or co-lead counsel in many actions in state and federal courts throughout the country. *See id.*, Ex. 2. Messrs. Klinger and Yanchunis have even more experience than Mr. Berry in data privacy class actions. *See id.,* Exs. 3, 4. Thus, Plaintiffs and Class Counsel meet the adequacy prong.

### 5. Certification under Rule 23(b)(3) is appropriate

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Here, Rule 23(b)(3) is satisfied because: (i) the questions of law and fact common to Class Members predominate over any individual questions; and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### a. *Common Questions of Law and Fact Predominate*

Here, the common factual and legal questions predominate. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010), *reversed on other grounds*, *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members"). Class action status is appropriate where common questions are a major aspect of a case and can be resolved at once. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 528 (2d ed. 1986). These questions need not be dispositive of the entire action. *Id.* at 528-29. The presence of "some factual variation among the class grievances will not

defeat a class action." *Rosario*, 963 F.2d at 1017; *see also Chandler*, 162 F.R.D. at 308 (N.D. Ill. 1995) ("It is well-established . . . that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class.").

Here, the claims are based on uniform conduct regarding a single data incident that affected all proposed Settlement Class Members in similar fashion and for the same amount of time. Because these core issues involve uniform conduct common to all proposed Class Members, the Rule 23(b)(3) predominance requirement is satisfied.

### b. *A Class Action is the Superior Method of Adjudicating this Case*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied here. *See* Fed. R. Civ. P. 23(b)(3). Determining superiority involves examining "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted).

Here, there is little reason for proposed Class Members to prosecute individual actions. While the total economic harm caused by this Data Incident is significant, each individual claim is too small compared to the costs of litigating it separately. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendants' alleged failure to secure and safeguard the PI of the Class are real, the cost of individually litigating against Defendants would easily exceed the value of any relief that could be obtained by any one consumer. Thus, a class action is a superior method of adjudication.

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the technical issues involved are too complex, and the required expenses too costly. Thus, the Court may certify the Class for settlement under Rule 23(b)(3).

### B. The Proposed Settlement Satisfies the Standard for Preliminary Approval

After it has been determined that certification of the Class is appropriate, the Court must then determine whether the Settlement is worthy of preliminary approval such that notice should be provided to the class. The Settlement satisfies the factors set forth by the Seventh Circuit in assessing whether a proposed settlement is within the range of fair, reasonable, and adequate:

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT & T Mobility Wireless Data Services Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); *see also*, *e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (reiterating "longstanding guidance" of the relevant factors for determining fairness of class action settlement). In weighing these factors, a court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. The Seventh Circuit has explained that courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99. Further, "[t]he essence of settlement is compromise . . . . Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker & Sons*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [it] does not provide a complete

victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the proposed Settlement here is well "within the range of possible approval" and weighs in favor of preliminary approval.

> **1. The Strength of Plaintiffs' Case is Well-Balanced Against the Amount Offered in Settlement.**

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *In re AT&T Mobility Wireless*, 270 F.R.D. at 346 (internal citations omitted). The Seventh Circuit is clear that "[a]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Id.* at 347. Plaintiffs believe in their case but must recognize the risks as well.

Fact-intensive inquiries are pervasive in this action. Plaintiffs' contentions that Defendants failed to secure and safeguard their PI involves consideration of many facts surrounding the Data Security Incident, including the manner in which the information was potentially compromised, the length of time the information was compromised, the types of information involved, and whether any of the information was accessed or used as a result. Proving causation in this case presents a significant hurdle. Quantifying damages is similarly difficult. Defendants would attempt to present certain materials as evidence and arguments that would seek to demonstrate that: (i) their security was adequate; (ii) Plaintiffs' damages were not, in whole or in part, caused by the Data Security Incident; and (iii) assessments by allegedly independent third parties found that Defendants complied with applicable data security standards. Defendants would also likely claim that they addressed any injury to the Class by sending written notice of the Data Security Incident to Class members with an offer of free credit monitoring.

- 19 -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement Case No. 1:22-cv-00137

Second, if the Settlement is not approved, the intense litigation that has already occurred to date will resume and the case will proceed to possibly trial and appeal. The Parties disagree about the merits of Plaintiffs' claims. Although this Court denied Defendants' Motion to Dismiss based on Fed. R. Civ. P. 12(b)(6) in part, it did not rule on the merits. There is uncertainty about the ultimate outcome of this Action.

Third, valuing damages is difficult. Even without any discount for the risks of continued litigation, most if not all injuries suffered were relatively small, and establishing a nexus between those injuries and the Data Security Incident may be problematic. The value of any recovery erodes over time, and litigation expenses increase.

Fourth, Defendants would oppose class certification. Plaintiffs believe that class certification is appropriate but are cognizant of the risk that the Court may not certify a class or may limit the size of any class. This Court or the Seventh Circuit might ultimately conclude that individualized questions predominate over any common questions. Moreover, even if Plaintiffs are successful in gaining certification of their claims, the class certified may ultimately be smaller than the nationwide class to whom the Settlement will confer its benefits.

Finally, the time and resources it will take to litigate the case counsels in favor of approval. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also In re AT&T Mobility Wireless*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted). The Settlement Class will realize immediate benefits once the claims process is completed. Factually, it is clear that the Data Security Incident occurred. However, the legal questions, such as whether Defendants

are liable and valuation of damages, remain disputed. The present value of the Settlement is significant compared to the risks—thus the Settlement merits approval.

## 2. The Complexity, length, and Expense of Continued Litigation Favors Settlement

The "complexity, length, and expense of continued litigation, are relevant factors in assessing the Settlement. *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015). The Settlement makes a final decision on several disputed factual and legal issues unnecessary. While the Parties have conducted significant formal and informal discovery, if litigation proceeded, more discovery would be needed, including expert discovery. The costs of testifying experts who would opine regarding the economic harms caused to consumers, discovery, class certification, summary judgment motion practice, as well as other pre-trial and trial expenses would be substantial, all of which would also delay final resolution. Therefore, this factor also weighs in favor of preliminary approval.

## 3. There is No Opposition to the Settlement Among the Impacted Parties

Prior to class notice, no Class Members, including the named Plaintiffs, have indicated any objections to the proposed Settlement. Class Counsel will revisit this issue at the Final Approval Hearing.

## 4. The Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

A settlement is presumed to be fair and reasonable when it is the result of arms'-length negotiations. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations'") (citation omitted); *In re Holocaust Victim Assets Litig.*, 105

F.Supp.2d 139, 145-46 (E.D.N.Y. 2000) (in determining fairness, the "consideration focuses on the negotiating process by which the settlement was reached") (internal quotation omitted). This presumption is applicable here.

As discussed above, the Settlement results from years of arm's-length negotiations, including four day-long mediation sessions with an experienced data breach class action mediator, and retired United States District Judge, Hon. Wayne Andersen, and numerous other telephone conferences with the mediator and directly between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after voluminous fact discovery, including multiple depositions, as well as in informal discovery, interviews, and meticulous investigation of the Data Incident. Given these facts, the Settlement is shown to be non-collusive.

### 5. The Parties Engaged in Significant Motion Practice and Discovery

Class Counsel investigated, in detail, the facts and law relating to the matters alleged. Formal discovery, involving the production of voluminous documents, depositions, and substantial motion practice, has been ongoing for over a year. Plaintiffs also conducted informal discovery to inform settlement negotiations. Plaintiffs learned the details of the underlying facts, including *inter alia*: how many people were impacted; what kind of data was stolen; and other vital facts for understanding the breach. The Parties have also briefed the legal issues at hand extensively. Plaintiffs fully understand the merits of this case—weighing in favor of preliminary approval.

### C. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator

Plaintiffs seek to be appointed as Class Representatives. All Plaintiffs have cooperated with counsel, provided discovery, and assisted in the preparation of the complaints, and Plaintiffs Bock, Horning, and Kroll have been deposed. Plaintiffs are committed to continuing to vigorously

prosecute this case all the way through the Court's final approval. The Court should appoint them as Class Representatives. Also, for the reasons previously discussed, the Court should designate Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC; M. Anderson Berry of Clayeo C. Arnold, APC; and John A. Yanchunis of Morgan & Morgan Complex Litigation Group as Class Counsel. Finally, the parties have agreed that Kroll shall act as Settlement Administrator. Kroll and its principals have a long history of successful settlement administrations in class actions and therefore the Court should appoint Kroll as Settlement Administrator. *See* Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Preliminary Approval of Settlement ("Kroll Decl."), ¶ 2.

### D. The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan provides the best notice practicable here. The Parties negotiated the form of the Notice with Kroll's aid. The Notice will be disseminated to Settlement Class Members whose names and addresses can be identified with reasonable effort from Defendants' records, and through databases tracking nationwide addresses and address changes. Kroll will administer the

- 23 -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

Settlement Website containing important and up-to-date information about the Settlement and provide a toll-free telephone number with live operators available. Kroll Decl., ¶¶ 6-13.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed Notice Plan satisfies this requirement, as it notifies Settlement Class Members of Class Counsel's intended application for attorneys' fees and expenses. It also complies with Rule 23 and due process because, *inter alia*, it informs the Class of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment absent exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information about the payment of proposed Attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan is designed to provide the best notice practicable, apprises Class Members of the action, and gives them an opportunity to object or exclude themselves. *See Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011) (finding similar class notice plan of direct mail notice to settlement class members was the best practicable and satisfied concerns of due process). Thus, the Court should approve the Notice Plan. Fed. R. Civ. P. 23(c)(2)(A).

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs, by and through their counsel, respectfully submit that the Court should: (1) preliminarily approve the terms of the Settlement as fair, adequate, and reasonable; (2) provisionally certify the Class pursuant to Federal Rule of Civil

- 24 -

Mem. of Points and Authorities in Support of Motion for Preliminary Approval of Class Action
Settlement Case No. 1:22-cv-00137

Procedure 23(b)(3) for settlement purposes only; (3) approve the Notice Program and approve the form and content of the Notice; (4) approve the procedures set forth in the Settlement Agreement for exclusion and objection; (5) stay all proceedings in this matter unrelated to the Settlement pending final approval; (6) stay and/or enjoin, pending final approval, any actions brought by Class Members concerning a released claim; and (7) schedule a Final Approval Hearing for a time and date convenient for the Court for the purpose of determining whether the Settlement is fair, reasonable, and adequate and, therefore, deserving of final approval.

Date: September 12, 2024

Respectfully Submitted,

*/s/ M. Anderson Berry*
M. Anderson Berry
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)777-7777
aberry@justice4you.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

***Interim Class Counsel***

John A. Yanchunis
**MORGAN & MORGAN COMPLEX**
**BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
jyanchunis@ForThePeople.com

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**

750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

Carl Malmstrom
**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
111 W. Jackson Boulevard, Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 545-4653
malmstrom@whafh.com

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES**
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
Telephone: 312.899.9090
rac@cliffordlaw.com
smm@cliffordlaw.com

David K. Lietz
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue, NW, Suite 440
Washington, DC 20015
Telephone: 866.252.0878
dlietz@milberg.com

Nathan D. Prosser
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, MN 55439
Telephone: (952)941-4005
nprosser@hjlawfirm.com

Terence R. Coates
**MARKOVITS, STOCK & DEMARCO, LLC**
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 651-3700
tcoates@msdlegal.com

Bryan L. Bleichner

**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com

Joseph Lyon
**THE LYON FIRM, LLC**
2754 Erie Ave
Cincinnati, Ohio 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

*Additional Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ M. Anderson Berry

M. Anderson Berry
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)777-7777
Email: aberry@justice4you.com